IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FILE NO. _____

| | |
|---|---|
| THE BURLINGTON, INSURANCE COMPANY      Plaintiff,<br><br>v.<br><br>ALMA EASTERLING D/B/A JAYANNAS #1 A/K/A THE SPOT; JAYANNAS #1 D/B/A THE SPOT; THE SPOT 843 D/B/A THE SPOT; THE SPOT BAR AND LOUNGE D/B/A THE SPOT; LAQUAN POUNCY, Individually and as Personal Representative of the Estate of Lancetausha Pouncy; DEIONTE CAIN; and RICKELLE LITTLEJOHN,      Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT** |

**COMES NOW** the Plaintiff, The Burlington Insurance Company ("TBIC"), by and through counsel, and pursuant to Rule 57 of the Federal Rules of Civil Procedure and the provisions of 28 U.S.C. § 2201, and alleges and says:

**Preliminary Statement**

1.  Pursuant to 28 U.S.C. § 2201, TBIC seeks a declaratory judgment and adjudication concerning the rights, obligations and liabilities of the parties under a commercial policy of insurance with respect to claims against Defendants Alma Easterling d/b/a Jayannas #1 a/k/a The Spot; Jayannas #1 d/b/a The Spot; The Spot 843 d/b/a The Spot; and The Spot Bar and Lounge d/b/a The Spot in suits captioned "*Laquan Pouncy, individually and as Personal Representative of the Estate of Lancetausha Pouncy, deceased  v. Alma Easterling d/b/a Jayannas #1 a/k/a The Spot*," Case No. 2022-CP-34-00290 (the "Underlying Pouncy Lawsuit"), and "*Deionte Cain*

1

*and Rickelle Littlejohn v. Alma Easterling, Individually and as an Agent/Employee of Jayannas #1, The Spot 843 and The Spot Bar and Lounge; Jayannas #1 d/b/a The Spot; The Spot 843 d/b/a The Spot; and The Spot Bar and Lounge d/b/a The Spot,*" Case No. 2024-CP-34-00434 (the "Underlying Cain-Littlejohn Lawsuit), which are pending in the Court of Common Pleas for Marlboro County, South Carolina (collectively, the "Underlying Lawsuits").

## Jurisdiction

2.     Jurisdiction over the claims contained herein is invoked pursuant to 28 U.S.C. § 1332(a)(1) and (c) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00.

## Venue

3.     This action properly lies in the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1391(b)(1) and (2) since the defendants all reside in the same state and in this judicial district, and since a substantial part of the events giving rise to this declaratory judgment occurred in this judicial district.

## Parties

4.     TBIC is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of Illinois, with its principal place of business in Hartford, Connecticut. TBIC is authorized to transact business and write insurance policies in the State of South Carolina.

5.     Upon information and belief, Defendant Alma Easterling ("Easterling") is and was a citizen and resident of the State of South Carolina, and, at all times alleged herein, was an owner of Defendants Jayannas #1, The Spot 843 and The Spot Bar and Lounge, and at all times relevant owned, operated, and/or managed the property located at 614 Highway 15-401 Bypass East,

Bennettsville, SC 29512 (the "Premises"), she owned, operated, and/or managed the bar advertised as The Spot.

6. Upon information and belief, Defendant Jayannas #1 ("Jayannas #1") is and was a corporation organized and existing under the laws of the State of South Carolina, whose registered agent for service of process is Alma Easterling at 423 Highway 385, Bennettsville, SC 29512, and who at all times relevant was doing business and owned property in South Carolina, including in Marlboro County.

7. Upon information and belief, Defendant The Spot 843 ("The Spot 843") is and was a corporation organized and existing under the laws of the State of South Carolina, whose registered agent for service of process is Alma Easterling at 423 Highway 385, Bennettsville, SC 29512, and who at all times relevant was doing business and owned property in South Carolina, including in Marlboro County.

8. Upon information and belief, Defendant The Spot Bar and Lounge ("The Spot Bar") is and was a corporation organized and existing under the laws of the State of South Carolina, whose registered agent for service of process is Alma Easterling at 614 Highway 15-401 Bypass East, Bennettsville, SC 29512, and who at all times relevant was doing business and owned property in South Carolina, including in Marlboro County.

9. Upon information and belief, Defendant Laquan Pouncy has been appointed as the personal representative of the Estate of Lancetausha Pouncy (the "Estate of Pouncy") by the Marlboro County Probate Court, and has brought an action for the benefit of the heirs of the estate to recover damages for the death of Lancetausha Pouncy (the "Decedent"), pursuant to S.C. Code Ann. §15-51-10 *et seq.*, commonly referred to as the Wrongful Death Act. The Decedent was a citizen and resident of Marlboro County, South Carolina at all times mentioned herein prior to her death.

10. Defendant Laquan Pouncy ("Pouncy") is and was a citizen and resident of Marlboro County, South Carolina.

11. Defendant Deionte Cain ("Cain") is and was a citizen and resident of South Carolina at all times mentioned herein.

12. Defendant Rickelle Littlejohn ("Littlejohn") is and was a citizen and resident of South Carolina at all times mentioned herein.

## Facts

**A.    The Shooting**

13. Upon information and belief, on July 23-24, 2022, Easterling owned and operated a club known as The Spot located at 614 Highway 15-401 Bypass East, Bennettsville, SC ("The Spot").

14. Upon information and belief, in the early morning hours of July 24, 2022, Pouncy, the Decedent, Cain, and Littlejohn were present at The Spot.

15. Upon information and belief, during the evening hours of July 23, 2022, and/or in the early morning hours of July 24, 2022, Pouncy and/or the Decedent became involved in an altercation with Cain and/or Littlejohn at The Spot.

16. As shown by surveillance video footage of The Spot, during the course of the altercation between Pouncy and/or the Decedent and Cain and/or Littlejohn as well as others, several shots were fired which resulted in injuries to the Decedent, Cain, and Littlejohn, and resulted in the death of the Decedent (the "Shooting").

17. On February 2, 2023, the retail insurance agent for Easterling submitted a Liability Notice of Occurrence/Claim to TBIC which described the Shooting as follows: "Altercation took place in PH parking lot exit and resulted in a gun fight leaving one person deceased," and includes in the Remarks section that "PH feels NO neglect in this incident-

it was apparently between two different [sic] groups that had ongoing differences in the past." A true and accurate copy of the Liability Notice of Occurrence/Claim is attached hereto as **Exhibit 1** and incorporated herein by reference.

### B.     The Underlying Lawsuits

#### i.     *The Underlying Pouncy Lawsuit*

18.    On or about November 9, 2022, Pouncy filed the Underlying Pouncy Lawsuit, asserting claims arising out of the Shooting that occurred on July 24, 2022.  On August 11, 2023, Pouncy filed an Amended Complaint in the Underlying Pouncy Lawsuit, which named Easterling as a defendant.  A true and accurate copy of the Amended Complaint filed in the Underlying Pouncy Lawsuit is attached hereto as **Exhibit 2** and incorporated herein by reference.

19.    It is alleged in the Amended Complaint in the Underlying Pouncy Lawsuit that Easterling was on notice that the business, The Spot, being operated at the location in question, was dangerous, unsafe to the public, and unsafe to the Decedent, and negligently and recklessly failed to notify the public and the Decedent of these dangers.

20.    It is further alleged in the Underlying Pouncy Lawsuit that "[p]rior similar incidents of dangerous, negligent, illegal, and injurious conduct and harm to persons gave rise to a duty on the part of [Easterling] to employ competently trained security guards during operating hours," and "[Easterling] breached the duty to make the premises safe."

21.    Although the Amended Complaint alleges that "[a]t no time herein mentioned is an intentional act alleged" and "[a]t no time herein mentioned is an assault or battery alleged," the notice of loss and information that Easterling provided in relation to the Shooting indicated that an "[a]ltercation took place in [policyholder] parking lot exit and resulted in a gun fight

5

leaving one person deceased" and "it was apparently between two different groups that had ongoing differences in the past."

22. Additionally, surveillance video of The Spot also shows that the Shooting in the parking lot, with multiple individuals firing several shots at other individuals in the parking lot of The Spot during the course of the Shooting.

23. In the Underlying Pouncy Lawsuit, negligence claims have been asserted against Easterling based upon the following alleged negligent, careless, reckless, willful, and grossly negligent acts:

    a. In failing to properly train their management and security staff;

    b. In failing to prevent injuries on the premises;

    c. In failing to properly supervise their management and security staff;

    d. In the hiring of their management and security staff;

    e. By negligently allowing injury to the Decedent;

    f. In failing to hire competent management and security staff;

    g. In failing to employ proper policies and procedures to prevent injuries to patrons;

    h. In failing to maintain adequate security staff on their premises; and

    i. Any such other particulars as may be ascertained through discovery procedures undertaken pursuant to South Carolina Rules of Civil Procedure.

24. It is also alleged that "[Easterling], through the agents, servants, and/or employees of The Spot breached [its] duty of care to the public and the Decedent by negligently and recklessly serving alcohol to persons who were visibly intoxicated."

25. Actual damages and punitive damages are sought against Easterling in the Underlying Pouncy Lawsuit.

### ii.     *The Underlying Cain-Littlejohn Lawsuit*

26.     On or about December 18, 2024, Cain and Littlejohn filed the Underlying Cain-Littlejohn Lawsuit, asserting claims arising out of the Shooting that occurred on July 24, 2022. A true and accurate copy of the Complaint filed in the Underlying Cain-Littlejohn Lawsuit is attached hereto as **Exhibit 3** and incorporated herein by reference.

27.     It is alleged in the Complaint in the Underlying Cain-Littlejohn Lawsuit that "Defendants had actual and constructive knowledge of significant and substantially similar violent criminal activity existing on and around the property prior to the events giving rise to this action" and "negligently failed to warn Plaintiffs and their invitees of the existence of the aforementioned criminal activity and the likelihood of further criminal attacks."

28.     It is further alleged that "Plaintiffs were attacked at the Defendants' place of business on the subject premises" and that "[t]he actions and omissions of the Defendants directly, and in a natural and continuous sequence, caused and contributed to the brutal attack of the Plaintiffs."

29.     In the Underlying Cain-Littlejohn Lawsuit, negligence claims have been asserted against Easterling and the other defendants named in the Cain-Littlejohn Lawsuit based on the allegations that they failed to:

       a. Adequately distribute information to assist employees in identifying possible threats to the safety of their guests and invitees;

       b. Provide a process for escalating concerns within the organization;

       c. Mandate that managers, employees or owners attend training related to ensuring the safety of their guests and invitees;

       d. Develop and hold or require ongoing training sessions on possible threats to the safety and security of their guests and invitees minors; and

      e. Provide checklists, escalation protocols, and other information to property management staff regarding possible dangers and threats to the safety of their guests and invitees.

30. In support of the dram shop claim in the Underlying Cain-Littlejohn Lawsuit, it is alleged that Easterling and the other defendants were negligent, negligent per se, careless, reckless, grossly negligent, willful and wonton, and acted intentionally:

      a. In selling alcoholic beverages to patrons they knew or should have known were intoxicated, and carrying firearms;

      b. In failing to adequately train, supervise or monitor their employees;

      c. In hiring employees who were insufficiently trained or qualified for the responsibilities of their employment;

      d. In failing to implement policies and standards regarding the responsible sale and service of alcoholic beverages or, if so implemented, in failing to ensure that those policies and standards were followed by their employees;

      e. In failing to follow generally accepted standards of care applicable to the sale and service of alcoholic beverages to members of public;

      f. In failing to use the degree of care and caution a reasonable and prudent person would have exercised under the same or similar circumstances; and

      g. In deviating from the accepted standard of care in the sale of alcoholic beverages.

31. Actual damages and punitive damages are sought against Easterling and the other defendants named in the Underlying Pouncy Lawsuit

32. In support of the claim for punitive damages it is alleged that "the actions of Defendants and their agents and employees showed willful misconduct, malice, fraud, wantonness,

oppression and an entire want of care, which would raise the presumption of a conscious indifference and/or a specific intent to cause harm."

**C.     The TBIC Policy**

33.    TBIC had issued to Alma Easterling DBA Jayannas#1, as the named insured, a commercial policy of insurance, policy no. 861 B002333, effective from April 26, 2022, to April 26, 2023 (the "TBIC Policy"). The TBIC Policy was cancelled effective December 31, 2022.

34.    The TBIC Policy includes a Commercial General Liability ("CGL") Coverage Part with a liability limit of $1 million Each Occurrence and a $2 million General Aggregate Limit, and a Liquor Liability Coverage Part with a liability limit of $1 million Each Common Cause and a $1 million Aggregate Limit.

35.    A true and accurate copy of the TBIC Policy is attached hereto as **Exhibit 4** and is incorporated herein by reference.

36.    Although TBIC contends that the TBIC Policy does not provide coverage to Easterling or the other defendants named in the Underlying Lawsuits, including Jayannas #1, The Spot 843, and The Spot Bar, for the claims arising out of the Shooting, TBIC agreed to defend Easterling in relation to the Underlying Pouncy Lawsuit subject to a full and complete reservation of rights as set forth in a coverage position letter issued on February 10, 2023, and also agreed to defend Easterling and the other defendants named in the Underlying Cain-Littlejohn Lawsuit subject to a full and complete reservation of rights as set forth in a coverage position letter issued on January 22, 2025, including the right to file a declaratory judgment action to seek a declaration that coverage is not afforded to Easterling or the other defendants in the Underlying Lawsuits.

37.    TBIC has filed the present action in order to seek a declaration relative to the rights, duties, and obligations of the parties under the TBIC Policy with regard to the claims and damages

sought against Easterling or the other defendants named in the Underlying Lawsuits, including Jayannas #1, The Spot 843, and The Spot Bar.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment – No Coverage under the TBIC Policy)**

38.     TBIC incorporates by reference the preceding paragraphs as if fully set forth herein.

39.     The "Assault & Battery" exclusions applicable to the CGL Coverage Part and the Liquor Liability Coverage Part in the TBIC Policy provides as follows:

> **EXCLUSION – ASSAULT, BATTERY OR OTHER PHYSICAL ALTERCATION**[1]
> \*\*\*
> **D.**     This insurance does not apply to:
>
> **Assault, Battery Or Other Physical Altercation**
>
> This insurance does not apply to "injury or damage":
>
> **(1)**     Expected or intended from the standpoint of any insured;
>
> **(2)**     Caused by or arising, directly or indirectly, in whole or in part out of any "assault" or "battery" committed or attempted by any person;
>
> **(3)**     Caused by or arising, directly or indirectly, in whole or in part out of any act, error, or omission in connection with avoiding, preventing, suppressing, or halting any actual or threatened "assault" or "battery"; or
>
> **(4)**     Caused by or arising, directly or indirectly, in whole or in part out of any actual, alleged, or threatened verbal or physical confrontation or altercation committed, or any act, error, or omission in connection with avoiding, preventing, suppressing, or halting any actual or threatened verbal or physical confrontation or altercation.
>
> \*\*\*
>
> **G.**     The exclusions added in paragraphs **D**, **E** and **F** of this endorsement apply to all acts, errors, or omissions, even if the claims against any insured allege negligence or other wrongdoing, including, but not limited to:
>
> **(1)**     All theories of liability (direct or vicarious) asserted against any insured, including, but not limited to, all theories of negligence, gross negligence, recklessness, or intentional tort and shall not be subject to any severability or separation of insureds provision in the policy;
>
> **(2)**     The supervision, hiring, employment, training, or monitoring of others by that insured; or

---

[1] The "Assault & Battery" exclusion quoted herein is found in the CGL Coverage Part to the TBIC Policy and is identical in all relevant respects to the "Assault & Battery" exclusion in the Liquor Liability Coverage Part in the TBIC Policy.

     **(3)**    The rendering of or failure to render aid, medical or otherwise, to any victim of the "assault" or "battery" or physical confrontation or altercation.

  **H.**    For the purposes of this endorsement, the following is added to the **Definitions** section of this policy:

"Injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes damage arising out of any act, error, or omission, loss, covered pollution cost or expense, "bodily injury", "property damage", "personal and advertising injury", or "damages" as defined in the applicable Coverage Part.

"Assault" means any attempt or threat to inflict injury upon the person of another, or any display of force such as would give a person reason to fear or expect immediate bodily harm.

"Battery" means physical contact with a person without his or her consent that entails some injury or offensive touching.

40. A genuine, actual, and justiciable controversy has now arisen and presently exists between and among the parties to this action concerning the applicable coverage afforded by TBIC under the TBIC Policy for the claims or damages resulting from the allegations contained in the Underlying Lawsuit, and specifically whether the TBIC Policy provides coverage to Easterling and the other defendants named in the Underlying Lawsuits for the claims asserted against Easterling and the other defendants named in the Underlying Lawsuits.

41. This action is ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. § 2201. A final ruling by this Court will determine the rights and obligations of the parties and will settle the controversy among them as to whether TBIC has an obligation to defend and/or indemnify Easterling and the other defendants named in the Underlying Lawsuits under the TBIC Policy.

42. The TBIC Policy does not provide coverage to Easterling or the other defendants named in the Underlying Lawsuits, including Jayannas #1, The Spot 843, and The Spot Bar, for the claims asserted in the Underlying Lawsuits because:

    a.    The "Assault & Battery" exclusions in the TBIC Policy exclude coverage under the policy for the claims in the Underlying Lawsuits because the "injury or

11

        damage" or "injury" claimed in the Underlying Lawsuits was: (1) caused by or arose, directly or indirectly, in whole or in part out of any "assault" or "battery" committed or attempted by any person; (2) caused by or arose, directly or indirectly, in whole or in part out of any act, error, or omission in connection with avoiding, preventing, suppressing, or halting any actual or threatened "assault" or "battery;" or (3) caused by or arose, directly or indirectly, in whole or in part out of any actual, alleged, or threatened verbal or physical confrontation or altercation committed, or any act, error, or omission in connection with avoiding, preventing, suppressing, or halting any actual or threatened verbal or physical confrontation or altercation.

b.    The claims asserted in the Underlying do not fall within the coverage afforded under the "Insuring Agreement" for Coverage A – Bodily Injury and Property Damage Liability in the CGL Coverage Part in the TBIC Policy because the claims were not caused by an "occurrence" as that term is defined in the TBIC Policy;

c.    The "Liquor Liability" exclusion bars coverage under Coverage A – Bodily Injury and Property Damage Liability in the CGL Coverage Part in the TBIC Policy because the "bodily injury" claimed in the Underlying Lawsuits is "bodily injury" for which any insured may be held liable by reason of: (1) causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises; (2) the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence

        of alcohol; or (3) any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages; and

    d.    The "Exclusion – Punitive Damages" endorsement to the TBIC Policy excludes coverage under the TBIC Policy for any claim for punitive or exemplary damages or any fees, including but not limited to attorney fees, costs, interest, or damages attributable to punitive or exemplary damages that may be awarded in the Underlying Lawsuits.

43.    The TBIC Policy does not provide coverage to Easterling or the other defendants named in the Underlying Lawsuits, including Jayannas #1, The Spot 843, and The Spot Bar, for any of the claims in the Underlying Lawsuits because the TBIC Policy contains other terms, conditions, and exclusions which otherwise preclude coverage for the claims asserted against Easterling and the other defendants named in the Underlying Lawsuits.

44.    Additionally, as to Jayannas #1, The Spot 843, and The Spot Bar, the TBIC Policy does not provide coverage to Jayannas #1, The Spot 843, and The Spot Bar because such entities do not qualify as "insureds" under the terms of the TBIC Policy.

45.    TBIC requests this Court to declare the rights, obligations, and liabilities of the parties under the TBIC Policy with respect to the claims asserted in the Underlying Lawsuits. Specifically, TBIC is entitled to a judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, declaring and adjudging that it does not have an obligation to defend or indemnify Easterling or the other defendants named in the Underlying Lawsuits, including Jayannas #1, The Spot 843, and The Spot Bar, under the terms of the TBIC Policy in relation to the claims asserted in the Underlying Lawsuits.

**WHEREFORE,** Plaintiff The Burlington Insurance Company respectfully prays the Court as follows:

1. That the Court declare and decree that the TBIC Policy does not afford coverage to Easterling or the other defendants named in the Underlying Lawsuits, including Jayannas #1, The Spot 843, and The Spot Bar, for any of the claims in the Underlying Lawsuits;

2. That the Court declare and decree that TBIC is not required to defend Easterling or the other defendants named in the Underlying Lawsuits, including Jayannas #1, The Spot 843, and The Spot Bar, under the TBIC Policy in relation to the Underlying Lawsuits;

3. That the Court declare and decree that TBIC is not required to indemnify Easterling or the other defendants named in the Underlying Lawsuits, including Jayannas #1, The Spot 843, and The Spot Bar, under the TBIC Policy for the claims asserted in the Underlying Lawsuits;

4. That the costs of this action be taxed against the Defendants;

5. For a trial by jury on all issues so triable; and

6. For such other and further relief as the Court may deem just and proper.

This the 24th day of November, 2025.

/s/ David G. Harris
David G. Harris II (S.C. Federal Bar No.: 12039)
David L. Brown (N.C. State Bar No. 18942)
GOLDBERG SEGALLA LLP
701 Green Valley Road, Suite 310
Greensboro, North Carolina  27408
Telephone:   336.419.4900
Facsimile:    336.419.4950
Email:          dbrown@goldbergsegalla.com
                    dharris@goldbergsegalla.com

*Attorneys for The Burlington Insurance Company*